HENRY C. WEMHANER *et al.*, Commissioners of Highways, Appellants,  v.  HENRY C. PARKER *et al.*, Respondents.

### St. Louis Court of Appeals, October 30, 1888.

1. **Public Road:** BOND FOR DAMAGES. The defendants executed a penal bond of five hundred dollars to the plaintiffs, as commissioners of highways in Illinois, conditioned for the payment of whatever damages were assessed, or to be assessed to land-owners, upon the opening and establishing of a public road. In an action on this bond, it is held to be no defense that a court of competent jurisdiction, in a suit between the commissioners of highways and the only contesting land-owner, determined that the road had never been established by prescription. Nor was evidence of that litigation available for any purpose, when it appeared that the land-owner had, before the commencement of this suit, been paid by the commissioners all the damages he claimed, and had coöperated with them in removing fences and throwing the road open to public use.

2. **Penal Bond:** TIME OF PAYMENT. It is no defense against an action on a penal bond given to commissioners of highways, conditioned for the payment of damages to land-owners, upon the opening of a public road, that the obligors had failed to perform a stipulation requiring them to place the money in the hands of the commissioners before the final order for opening the road.

*Appeal from the Lewis Circuit Court.*—HON. BEN. E. TURNER, Judge.

REVERSED AND JUDGMENT.

*Anderson & Schofield*, for the appellants.

The refusal of plaintiffs' second declaration of law was manifest error. There was abundant evidence to support it and the statute expressly authorized it. Such record "shall be *prima-facie* evidence in all cases that all the necessary antecedent provisions have been complied with, and that the action of the commissioners of highways, or other persons and officers in regard thereto,

were regular in all respects." Ill. Road Law, Acts 1879, secs. 88 and 91, p. 277; *Hawkins v. Galloway*, 88 Ill. 155; *Shinkle v. Magill*, 58 Ill. 422. Plaintiffs were clearly entitled to their declaration of law number three. The mere fact that the road was opened in pursuance of an order of the commissioners of highways and that it has since been, and still is, used and traveled by the public as a highway raises the presumption that it was lawfully opened and is a legal road. *Board v. People*, 116 Ill. 446; *Nealy v. Brown*, 1 Gill, 10; *Eyman v. People*, 1 Gill, 4; *Railroad v. Alder*, 56 Ill. 344; *Railroad v. Benton*, 69 Ill. 174. The acceptance by Peyton of the damages awarded him for locating and opening the road over his land, and the delivering of the road over by him to public use, will estop him from challenging either the validity or the regularity of the proceedings. *Town v. Town*, 29 Ill. 137; *Kile v. Town*, 80 Ill. 208; *Hartshorn v. Patroff*, 89 Ill. 509.

*George Ellison*, for the respondents.

If there was no lawful road established, then there could be no liability on the bond sued on by plaintiff. This question has virtually been passed on by the appellate court of the state of Illinois in the case of *Peyton v. Shaw*, 15 Brad. 197. One of the conditions of this bond is that the money to pay said damages should be placed in hands of commissioners before the final order opening said road should be made. There is no evidence whatever claiming that said commissioners ever demanded the damages due John Peyton before they ordered said road opened.

PEERS, J., delivered the opinion of the court.

This action is upon a bond executed by the defendants and one Gustine Parker to the predecessors in office of the plaintiffs, whereof the following is a copy:

"Know all men by these presents that Gustine Parker, George W. Parker and Henry C. Parker, are held and firmly bound unto the commissioners of roads

of Wilcox township, in the county of Hancock and state of Illinois, in the penal sum of five hundred dollars, for the payment of which well and truly to be made we bind ourselves, our heirs, executors, administrators and assigns, jointly and severally, by these presents. Signed with our hands and sealed with our seals, this fourth day of November, A. D., 1881.

"The condition of the foregoing obligation is such that whereas the above bounden parties are interested in the opening of a road in said township, commencing, etc. [Here follows a description of the road which it is not necessary to insert.] Now, therefore, if the said commissioners shall proceed according to law and open and establish the above described road, then the above bounden parties shall pay whatever damages as have been assessed to the owners of lands over which said road runs, and shall pay such additional damages as may be assessed in case of appeal, the money to pay said damages to be placed in the hands of said commissioners before the final order opening said road, then this obligation to be void; otherwise, to remain in full force and effect.

"GUSTINE PARKER,      [seal.]
"HENRY C. PARKER,    [seal.]
"GEORGE W. PARKER, [seal.]"

The petition, which is very lengthy, contains appropriate allegations of full compliance with the conditions of the instrument on the part of the plaintiffs and their predecessors in office by the pursuit of the various steps prescribed by the statute of Illinois in such cases, for counties under township organization, in laying out and establishing public roads, and that they had proceeded according to law and had opened and established said road; and assigned for breach the refusal of the defendants to pay the sum of one hundred and ninety-six dollars, the amount of damages assessed and allowed John Peyton, one of the owners of lands over which said road ran, and which the plaintiffs had been compelled to pay and had paid; and prays judgment for the penalty of

the bond to be satisfied by the payment of said sum of one hundred and ninety-six dollars, with interest and costs. The writing obligatory here sued on was executed and accepted in pursuance of section 90 of the road law of the state of Illinois, and the suit is brought by the commissioners in pursuance of the same section, which reads as follows : "Any person or persons interested in the establishment, alteration, widening or vacation of any road in this state, are hereby authorized to offer inducements to the commissioners of highways, for the establishment, alteration, widening or vacation of any such road, by entering into contract with said commissioners conditioned upon such establishment, alteration, widening or vacation, to pay money or any other valuable thing to the town, for the benefit of the road and bridge funds of the same, or to perform any labor or to construct any road, bridge or culvert on any road which said person or persons desire to have established, widened or altered. And such contract in writing made with said commissioners shall be deemed good and valid in law, and may be enforced by said commissioners or their successors in office, before any court having jurisdiction."

The answer is a general denial. The case was tried before the court without the intervention of a jury, and resulted in a finding and judgment for defendants, to reverse which the case is brought here by appeal. The undisputed facts are, that, at the time of the making and delivery of the writing obligatory sued on, the county of Hancock was, and still is, regularly organized under the laws of Illinois in relation to township organization ; that Wilcox was, and still is, one of the regularly organized towns of said county, and that all the officers, including the plaintiffs and their predecessors in office before whom the proceedings for the establishment of the road in question were had, had been duly elected and qualified according to law.

On August 20, 1881, there was presented to the then commissioners of highways of said town, a petition in writing signed by the requisite number of

qualified petitioners, asking for the laying out and establishment of the road in question. Due notice thereof had been previously given and said petition was drawn and presented as required by law.

The defendant Henry C. Parker and his brother Gustine Parker (who also signed the bond sued on), Charles Klingebiel, Andrew McMahon and John Peyton were the only owners of lands over which said road was to pass, and all. of whom executed proper releases of damages except McMahon and Peyton.

After receipt of the petition the commissioners caused a plat and survey of the route to be made, reported and filed ; they held a meeting to examine said route and hear reasons for and against laying out of said road, and then publicly announced their decision to grant the prayer of the petition, and endorsed a memorandum of their decision on the petition, all as required by law.

In due time thereafter, the commissioners instituted and pursued the proceedings required by statute for the assessment of damages to said McMahon and Peyton, which resulted in a verdict and judgment against said commissioners in favor of McMahon in the sum of forty-eight dollars, and in favor of Peyton in the sum of one hundred and ninety-six dollars.

And finally, on the fifth day of November, 1881, after fulfilling all the antecedent requirements of the law, the commissioners held a meeting upon due notice given, and then finally determined on the laying out of said road, and made and signed an order declaring same to be a highway and filed said order, which contained all the recitations required by the statute, together with the petition, survey, plat, releases and other accompanying papers, in the office of the town clerk, who in due time recorded the same.

The respondents were the persons chiefly interested and instrumental in promoting the establishment of the road. At the public meeting held by the commissioners under section 71 of the act, for the purpose of examining the route and hearing reasons for and against the

laying out of the road, the defendants and their brother Gustine agreed with the commissioners that they would bind themselves in a bond to pay all the damages resulting to all persons on account of said road and the laying out and establishing the same, and thereupon on the same day the prayer of the petitioners was granted.

In pursuance of this agreement, after the damages which they so agreed to bind themselves to pay had been assessed, and on the day of, and at, the meeting held by the commissioners to finally determine on the laying out of the road, the defendants made and delivered to the commissioners the bond sued on. The defendants well knew the amount of the damages assessed to McMahon and Peyton, and expressly referred to same in their bond in undertaking and promising therein to "pay whatever damages as have been assessed to the owners of lands over which said road runs." The bond was delivered to the commissioners at this meeting, but before the said final order establishing said road was made, and according to the witness, said final order would not have been made but for the making and delivery of said bond.

Shortly after the final order laying out and declaring said road a public highway, McMahon accepted the forty-eight dollars awarded to him as damages and the same was paid over to the commissioners by the defendants and credit for the amount duly entered on the bond.

Peyton, the other land-owner, to whom the one hundred and ninety-six dollars damages had been awarded, took and prosecuted his appeal, not from the award of damages, but only from the final order of the commissioners laying out said road, to three supervisors of the county, outside of said town. These supervisors were duly summoned by a justice of the peace, and after a full proceeding and hearing in pursuance of the statutes (secs. 98, 99, 100, 101 and 102), they, or a majority of them, ordered, adjudged and determined as follows: "That the order and determination of the

said commissioners of highways be, and the same are in all things approved."

A report of their proceedings and decision made in the case was made and filed and recorded in the office of the town clerk on November 30, 1881.

The damages awarded to John Peyton, viz., the one hundred and ninety-six dollars, were afterwards fully paid by the commissioners of highways and accepted by him before the commencement of this suit, and he went with said commissioners and assisted them in pulling down his fences and opening up the said road for public travel.

And said road has since been, and now remains open to and used by the public as a highway, repaired at public expense and under the undisputed charge of the plaintiffs, as commissioners of highways in all respects as other roads in said town.

All the foregoing evidence remains undisputed and unchallenged by the defendants, who introduced as the only evidence on their part, a written agreement dated April 8, 1885, purporting to have been entered into between John Peyton and John D. Shaw, parties to a suit then pending in the circuit court of Hancock county, and the commissioners of highways of the town of Wilcox.

It provides for the dismissal of said suit ; for the distribution and payment of the costs accruing therein in said court and in the appellate court, and the costs that accrued before the supervisors in hearing the appeal from the order of the commissioners of highways in laying out the road involved in the controversy, thereby compromised and settled. It also provides for the opening of the road by Peyton and for the payment by the commissioners and acceptance by Peyton of two hundred dollars in lieu of the one hundred and ninety-six dollars awarded him as damages by the jury called by the commissioners of highways to assess damages in the case.

At the conclusion of the testimony the plaintiffs moved the court to give the following six declarations of law :

"1. The court declares the law to be, that if the court sitting as a jury, shall believe from the evidence that the defendants made and delivered the writing obligatory sued on, to the commissioners of highways of the town of Wilcox in Hancock county, Illinois, by way of inducement for the establishment of a certain road in said writing described and in which the defendants were interested, and that said commissioners of highways proceeded according to law and opened and established said road as a public highway, and that damages were duly assessed to the owners of lands over which said road ran, as follows, viz., to John Peyton one hundred and ninety-six dollars and to Andrew McMahon forty-eight dollars, and that said damages have been paid by the commissioners of highways, and that plaintiffs are now the duly elected and qualified commissioners of highways of said town of Wilcox, then the finding and judgment should be for the plaintiffs for the sum of five hundred dollars, to be satisfied by the payment of said sum of one hundred and ninety-six dollars with six per cent. interest per annum thereon, from the time the evidence may show said sum was paid by the commissioners of highways to the said John Peyton up to this date, and the costs of suit.

"2. If the court sitting as a jury, shall believe from the evidence that on the fifth day of November, 1881, the commissioners of highways of the town of Wilcox, made and signed an order in writing declaring the road mentioned in the writing obligatory sued on, a public highway, and that said order contained, or had annexed thereto, a definite description of the line of said road, together with a plat thereof. And that, within ten days from the date of said order, the said commissioners of highways caused the same, together with the report of some competent surveyor, whom they had caused to make survey and plat of said road, and the petition for said road in writing setting forth a description of said road, the names of the owners of lands over which

said road was to pass, the point at or near which it was
to commence, its general course and the place at or near
which it was to terminate, signed by not less than twelve
householders residing in said town within three miles of
said road, together with the releases or agreements of
such owners of lands over which said road was to run,
in respect to damages ; all to be filed in the office of the
town clerk of said town of Wilcox. And that said clerk
noted thereon the date of such filing, and that said clerk
recorded said order, together with the plat of the survey,
in a proper book kept for that purpose.    Then the law
is that a certified copy of said record of the town clerk
and the papers, relating to the establishment and loca-
tion of said road, are *prima-facie* evidence that all the
necessary antecedent provisions of the law were com-
plied with, and that the action of the commissioners of
highways and other persons and officers, in regard to
said road, were regular in all respects.

"3.    If the court, sitting as a jury in this cause,
shall believe from the evidence that the road mentionêd
in the writing obligatory sued on was, after the making
and delivery thereof, ordered and declared by the com-
missioners of highways to be a public highway, and that
the same has been opened and is now used and traveled
by the public as a highway and is kept in repair as such,
then the law presumes that said road has been regularly
established as a highway and the burden of rebutting
such presumption by evidence to the contrary rests with
the defendant.

"4.    Although the court, sitting as a jury, may
believe from the evidence that an appeal from the decis-
ion of the commissioners of highways in determining to
lay out the road in question, was taken by John Peyton
to three supervisors of the county, if the court further
finds and believes from the evidence that upon a final
hearing before said supervisors, the order and determina-
tion of said commissioners of highways was in all things
approved and that they made a report of their proceed-
ings and decision and filed same with the town clerk of

said town of Wilcox, then the law presumes that all proceedings before said supervisors were regular and their award and decision are valid and binding upon the defendants in this cause.

"5.   If the court, sitting as a jury, shall find from the evidence that John Peyton finally agreed with the commissioners of highways in respect of his damages for the laying out and establishment of the road in question, and said commissioners paid the said Peyton the amount agreed upon, then the final order laying out and establishing said road is binding upon said Peyton and upon the defendants in this cause and the finding and judgment should be for the plaintiffs.

"6.   The court declares the law to be that under the pleadings and evidence in this cause the finding and judgment should be for the plaintiffs."

The court gave said declaration of law numbered one; but refused those numbered two, three, four, five and six.

On behalf of defendants the court gave the following declaration of law:   "Under the pleadings and evidence the judgment should be for the defendants."

Thereupon the court found and rendered judgment for defendants, from which, after an unsuccessful motion for new trial, the plaintiffs have appealed.

I.   The defendants insist that no lawful road was established under the proceedings before the commissioners, and cite us to the case of *Peyton v. Shaw*, 15 Bradwell, 192, as being decisive of that question.   We have examined this case with great care and are forced to the conclusion that the case cited is grounded upon an entirely different state of facts from that which the record in this case discloses.   We regard that case as holding and deciding only that the evidence presented in that record was insufficient to support a public road by "prescription," and upon that question it is an authority.   But even if the defendant's construction of *Peyton v. Shaw*, *supra*, is correct it is entirely disposed of by the evidence in this case, which clearly shows that after the decision was rendered and before

this suit was instituted Peyton accepted the damages, and in conjunction with the commissioners threw down his fences and opened up the road.

II.   The second defense relied upon by the defendant respondents is a remarkable one.   They insists that the plaintiffs failed to comply with the conditions of the bond sued on, *i. e.*, that by the bond the money to pay the damages was to be placed in the hands of the commissioners before the final order opening the road should be made, and if the commissioners had complied with this condition there would have been no necessity for this suit.   There can be no issue upon the latter part of this proposition.   If defendants had paid the money there would have been no suit, nor any ground for a suit, but does it follow that because defendants did not pay the money as they agreed and bound themselves to do, that they need not pay it at all?   To illustrate :   A. borrows money from B., giving his bond therefor payable on a day certain ; A. fails to call for it until ten days after due, can B. fold his arms and say, as you did not call for it the day it was due, I will not pay you anything?   This would certainly be a most anomalous excuse for refusing to pay a just debt.   The testimony of Shaw and Hughes shows that the bond was given at the very meeting and before the final order was made ; that it was to induce the commissioners to make the final order that the bond was given ; that the final order would not have been made if the bond had not been given.   The bond was conditioned to pay not only "whatever damages as have been assessed," but also such "additional damages" as may be assessed in "case of appeal."   Can it be said that it was their duty to discharge their liability on the bond prior to any ascertainment of the amount thereof, and the neglect of such duty on their part inures to their total absolution from the bond?   We are not prepared to so hold.   The defendants are all principals, and rules of construction having reference to the limited liability of sureties have no application.

The evidence shows that the commissioners paid the damages assessed ; that the road is open to the public, and in our judgment has been legally established.   The defendants have all the law  can give them and upon the receipt of which they bound themselves to pay.   We think it but just that they should comply with  their part of the undertaking.

So far we have not passed upon the instructions, nor do we think it important to do so for the disposition of this case, as there is no good  reason  why the case should be retried.   The order of the court will be judgment reversed and judgment entered  here for the penalty of the bond,  to be  satisfied by the payment of one hundred and ninety-six dollars, with six per cent. interest from the thirty-first day of  July, 1886.

ROMBAUER,  P. J.,  concurring,  it  is  so  ordered. THOMPSON, J., is absent.